The Honorable Michelle L. Peterson

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>SEBASTIEN RAOULT,<br><br>Defendant. | NO. CR21-109 RSL<br><br>GOVERNMENT'S OPPOSITION TO RAOULT'S MOTION FOR TEMPORARY RELEASE |

The United States opposes the temporary release of Sebastien Raoult, who has been extradited to the United States for significant computer hacking offenses and would pose both a great risk of flight and a financial danger if he were released. Raoult has been charged with hacking activities as a member of the ShinyHunters group, which hacked and marketed stolen data from many American and foreign companies. The ShinyHunters group hacked and sold millions of individuals' personally identifiable information, including financial information, and caused millions of dollars in losses to victim companies. Raoult and his family went to great lengths to try to prevent his extradition from Morocco to the United States and to try to bring him back to France,

Government's Opposition to Motion for Temporary Release - 1
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

from which the United States would be unable to extradite him. Raoult and his family have been very vocal to media outlets about their anger that Raoult would be subject to the U.S. criminal justice system. The government is very concerned that Raoult may also have the means to flee, because he has experience obtaining and using false identification information, there are conspirators out of custody who could help to orchestrate his escape, and the ShinyHunters group's hacking activities generated substantial profits that could also facilitate an escape. If Raoult were out of custody, he would also pose a financial danger to individuals and companies in the U.S. and around the world.

Raoult's desire to spend a week with his parents is not necessary for preparation of his defense or for another compelling reason, so he does not qualify for temporary release. In addition, neither taking away passports nor GPS location monitoring can effectively ensure Raoult's appearance, as defendants have fled with those measures in place in the past. Therefore, the government respectfully requests that the court deny Raoult's request for temporary release.

## I. BACKGROUND

An indictment charges Raoult and two co-conspirators with nine offenses related to their prolific hacking activities as part of the ShinyHunters hacking group. ECF No. 1. The indictment charges Raoult with conspiracy to commit computer fraud and abuse, conspiracy to commit wire fraud, wire fraud (four counts), and aggravated identity theft (three counts). ECF No. 1.

As alleged in the indictment, Raoult and his co-conspirators in the ShinyHunters group used phishing campaigns to steal login credentials, which they used to access companies' confidential data. ECF No. 1 at 2. The ShinyHunters group hacked millions of customer records, including personal and financial information. ECF No. 1 at 2-3, 9-11. The ShinyHunters group sold hacked data on dark web forums, demanded ransoms from some victim companies, and sometimes leaked stolen data to promote themselves.

Government's Opposition to Motion for Temporary Release - 2
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ECF No. 1 at 2. They marketed and promoted hacked data from more than 60 companies located in the United States, including the Western District of Washington, and in other countries. ECF No. 1 at 2.

The evidence shows that Raoult was instrumental in developing the software code and phishing websites that the ShinyHunters group used for its hacking activities. He also participated directly in hacking companies. As the discovery shows, Raoult encouraged the sale of stolen data and talked about his ability to find buyers who wanted to use individuals' stolen credit card numbers. *See, e.g.*, SH-00085429.

The loss to victims and the profit to ShinyHunters were both substantial. The government has not yet collected loss information from nearly all of the victim companies, but the reported losses so far amount to millions of dollars. Customers whose personally identifiable information and financial information was stolen likely also suffered substantial collective losses from identity theft. Meanwhile, the ShinyHunters members profited from ransoms and the sale of hacked data. Individual databases frequently sold for thousands of dollars and were sometimes even sold multiple times. The evidence includes ransom demands of up to $1.2 million.

Raoult is a French citizen but was arrested on the charges in this indictment in Morocco. Since his arrest, Raoult and his family have strenuously opposed his extradition to the United States, have attempted to get him to France instead, and have expressed anger that Raoult would face criminal charges in the United States.

Raoult and his family have been very public about their desire to avoid having Raoult face the U.S. criminal justice system. For example, a French media outlet published a letter that Raoult reportedly dictated to his father from Moroccan prison while the U.S. extradition request was pending. Exhibit 1, Translation of French Article from L'Obs; *Je me refuse a croire que la France m'a abandonne au sort de la justice americaine*, L'Obs, October 3, 2022,

Government's Opposition to Motion for Temporary Release - 3
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

https://www.nouvelobs.com/justice/20221003.OBS64004/je-me-refuse-a-croire-que-la-france-m-a-abandonne-au-sort-de-la-justice-americaine.html.  In translation, Raoult's letter stated, "I am asking for the Ministry of Justice and the Ministry of Foreign Affairs, and, if necessary, the President of France to take action and do everything necessary to make the United States drop the charges against me.  I am asking for the case to be transferred to the French judicial system, where I can plead my innocence in accordance with French law."  Raoult stated that he "refuse[d] to believe . . . that the French State can abandon me to the mercies of the American judicial system."  Raoult declared, "My place is not here, nor do I have anything to do in the United States.  My place is in France . . . ."

Raoult's father has also been vocal about his opposition to Raoult having to face the U.S. criminal justice system.  *See, e.g.*, *Sebastian Raoult's Father: My Son Was Sold to the Americans*, Morocco World News, August 9, 2022, https://www.moroccoworldnews.com/2022/08/350703/sebastian-raoults-father-my-son-was-sold-to-the-americans.  According to that article, Raoult's father "expressed his anger at a Moroccan court's decision to approve of his son's extradition to the United States."  The article quoted Raoult's father as saying, "My son was betrayed by France.  He was sold to the Americans."

Raoult and his family have acted on their sentiments by going to extreme lengths to try to prevent Raoult from facing the indictment in the United States.  In addition to fighting the extradition proceedings in Morocco, Raoult's family and his French attorney have lobbied the French government to extradite Raoult to France, and they tried to block the extradition to the United States by filing a petition with the U.N. Committee Against Torture, claiming that the potential sentence in the United States would constitute degrading or inhumane treatment.  *See Counsel for Alleged Member of ShinyHunters Tries a Legal 'Hail Mary' Play to Block Extradition*, DataBreaches, December 28, 2022,

Government's Opposition to Motion for Temporary Release - 4
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

https://www.databreaches.net/counsel-for-alleged-member-of-shinyhunters-tries-a-legal-hail-mary-play-to-block-extradition/.

Despite the extensive efforts by Raoult and his family to prevent the United States from obtaining custody of Raoult, Morocco granted the extradition request by the United States. Raoult made his initial appearance in Seattle on January 27, 2023.[1] ECF No. 18. Raoult declined to be interviewed by Pretrial Services and stipulated to detention. The Court ordered him detained as both a flight risk and a danger, stating its reasoning as follows: "The government's basis for a detention hearing was that Mr. Raoult is a serious risk of flight. The Court agrees. Mr. Raoult is a citizen of France, fought extradition to the United States, has no known ties to the United States, and was not interviewed by Pretrial Services so very little is known about it. The government also argues that he is a danger to the community given the nature of the allegations contained in the Indictment. The Court also agrees that Mr. Raoult poses a danger to the community and there are no conditions or combination of conditions that would mitigate the flight risk or danger." ECF No. 21.

## II.     LEGAL STANDARD

A court may grant temporary release if it is "necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). "The relief authorized by § 3142(i) is to be used 'sparingly.'" *United States v. McKnight*, 2020 WL 1872412, at *2 (W.D. Wash. Apr. 15, 2020); *United States v. Noland-James*, 2020 WL 1904049, at *2 (W.D. Wash. Apr. 17, 2020); *United States v. Green*, 2020 WL 2063664, at *3 (W.D. Wash. Apr. 29, 2020). When evaluating requests for temporary release, courts in this district have begun by considering "the original grounds for a defendant's pretrial detention." *United States v. Jackson*, 2022 WL 4466183, at *1 (W.D. Wash. Sept. 26, 2022). Courts have then considered "the strength of the defendant's interest in

---

[1] FBI obtained parole for Raoult to enter the country in U.S. custody. Because that parole was granted on the understanding that Raoult would be in U.S. custody, FBI will notify ICE about this request for release.

Government's Opposition to Motion for Temporary Release - 5
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the requested furlough" and "whether the proposed release plan strikes an appropriate balance among these considerations." *Id.* When the circumstances that originally warranted detention have not changed, courts have routinely rejected defendants' requests for release in the custody of family members for family reasons, such as funerals. *See, e.g.*, *United States v. Toledo Pardo*, 2023 WL 4641055, at *1-*2 (W.D. Wash. July 20, 2023); *United States v. Schley*, 2023 WL 2890384, at *1 (W.D. Wash. Apr. 11, 2023); *United States v. Rowelette*, 2022 WL 2531815, at *1 (W.D. Wash. July 7, 2022).

### III.  ARGUMENT

As explained below, Raoult presents a significant flight risk and danger to the community if he were temporarily released, especially given the significant hacking charges that he faces and his ability to return home to a non-extraditable country. Raoult has not established a reason that temporary release is necessary to prepare his defense or for another compelling reason, so he cannot qualify for temporary release pursuant to 18 U.S.C. § 3142(i). Furthermore, there are no conditions of temporary release that could adequately mitigate the risks of flight and danger.

**A.  Flight Risk**

Raoult poses an extreme risk of flight because he has both the motive and the potential means to flee. Not only does he face significant charges that could subject him to a lengthy prison term, but he and his family have conveyed by their words and their actions that they do not want him to face the charges in the United States. They want him to return to France, from which the U.S. would be unable to extradite him. Raoult may also have the means to flee, because he has used fake identities in the past, conspirators who are out of custody could assist Raoult with organizing his escape, and Raoult and his co-conspirators may have access to the profits of their lucrative hacking activity to facilitate his flight.

Government's Opposition to Motion for Temporary Release - 6
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     Raoult has an incentive to flee from the serious charges that he faces. As noted, the indictment charges him with conspiracy to commit computer fraud and abuse, conspiracy to commit wire fraud, wire fraud (four counts), and aggravated identity theft (three counts). ECF No. 1. Raoult would receive at least a mandatory minimum sentence of two years in prison, if he were convicted on a count of aggravated identity theft. It is likely that he would face a substantially higher sentence. As described above, the known loss to victims is in the millions of dollars, and the known loss is expected to increase as the government obtains information from additional victims. Thus, the government anticipates a Sentencing Guidelines range calling for substantial prison time.

    Raoult's motive to flee is enhanced by the fact that the United States would be unable to extradite him if he returned to his home country of France. Under French law, France will not extradite its own citizens. As the French Ministry of Justice has explained, "the fact that the wanted individual is a French national constitutes an insuperable obstacle to his/her removal." Letter from the French Ministry of Justice, *United States v. Ghislaine Maxwell*, No. 1:20-cr-330, ECF No. 165-1 (S.D.N.Y. Mar. 9, 2021). If Raoult fled to France, he could avoid facing the significant charges brought by the United States.

    This case presents an unusually concrete picture of Raoult's desire to avoid facing charges in the United States, because Raoult and his family have stated that position explicitly to the media on numerous occasions. As described above, Raoult dictated a letter from Moroccan prison in which he declares that he has nothing to do in the United States and his place is in France. *See* Exhibit 1. In that letter, Raoult specifically mentions the potential prison sentence in the United States as a reason that he does not want to face the American judicial system. *Id.* Raoult's father has spoken to the media repeatedly and expressed anger about Raoult's extradition to the United States. Raoult and his family have tried to prevent him from facing the U.S. charges by fighting the

Government's Opposition to Motion for Temporary Release - 7
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

extradition process in Morocco, appealing to the French government to bring him back to France, and petitioning the U.N. Committee Against Torture to intervene to block the extradition.  Thus, there is no question that Raoult and his family do not want him to be in the United States to face the charges against him.

In addition to Raoult having a motive to flee, Raoult's history and connections could give him the means to flee.  In particular, the government is very concerned that Raoult could obtain false identification documents that would facilitate an escape, even without his own passport.  Raoult is no stranger to possessing stolen and fake identities.  The charged offenses involved using other people's access credentials to breach companies' accounts.  Raoult and his co-conspirators also used false identities to cover their tracks when registering for malicious domains and online accounts that were used to execute the hacking scheme.  *See* ECF No. 1 at 4.  Then, from the breached companies, the hackers stole vast amounts of personally identifiable information belonging to customers.  That stolen information was valuable precisely because it could be used to commit identity theft.  The ShinyHunters group sold hacked data on the same dark web forums where there were also sales of passports and other fake identification documents.

Raoult had the connections to obtain false identification documents for himself, as the discovery for this case demonstrates.  For example, Raoult possessed a fake French national identity card in the name "Sezyo Kaisen," a moniker that Raoult frequently used.  SH-00079746.  Raoult also participated in online conversations about using fake identification documents, including fake French national identity cards.  In one conversation, Raoult asked his correspondent how that person made fake identification documents, the correspondent responded that he used Photoshop, Raoult asked if the correspondent would make fake identification documents as verification for PayPal, and the correspondent agreed.  SH-00085369.  Raoult then provided the false name and address that he wanted on the false identification documents.  *Id.*  Raoult's history thus

Government's Opposition to Motion for Temporary Release - 8
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

suggests that he would have access to stolen identity information and false identification documents, should he wish to obtain such false documents to facilitate an escape.

Raoult would likely have additional resources to orchestrate an escape from the United States. First, he may have access to substantial funds. As described above, the hacking activities charged in the indictment generated large profits for Raoult and his co-conspirators. Since Raoult declined to be interviewed by Pretrial Services, he has also not provided any asset disclosure. Second, Raoult has charged and uncharged conspirators who are out of custody. Those individuals, who also have experience with stolen and false identification information and have obtained substantial proceeds from hacking, could assist Raoult. With both the expressed desire and the likely means to avoid facing criminal charges in the United States, Raoult presents a very significant flight risk.

**B.     Danger to the Community**

If Raoult were released from custody, he would also pose a financial danger. As discussed above, Raoult and his co-conspirators inflicted very significant financial harm through their hacking activities. The ShinyHunters group marketed hacked data from more than 60 companies. The known loss to companies is in the millions and expected to increase as additional victims provide information. The ShinyHunters group hacked and sold millions of individuals' personal identifiable information, including financial information, subjecting those individuals to identity theft and financial harm.

Raoult played an instrumental role in developing the code and phishing websites that he and his co-conspirators used to trick victim companies' employees into giving up their access credentials, and Raoult talked in messages about how much he loved working on the phishing scam. Raoult was unsympathetic to the harm caused by his hacking activities, urging the sale of hacked data to buyers who wanted to steal credit card numbers.

Government's Opposition to Motion for Temporary Release - 9
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

If Raoult were not in custody, he could easily resume his hacking activities, even working with his co-conspirators who are not in custody. If Raoult fled to France, the United States would be unable to extradite him. From France, Raoult could continue inflicting harm on U.S. companies and U.S. citizens.

### C.      Reasons for Requesting Temporary Release

Although the government is sympathetic to Raoult's desire to spend time with his parents, he has not established that temporary release is necessary for preparation of his defense or for another compelling reason. Raoult's argument is that release is necessary because it will allow him to speak openly with his parents about this case, without FDC guards in earshot. *See* Def. Mot. at 3. However, every defendant could make the same argument that they would like to speak to their family without FDC guards present. Since temporary release is to be used "sparingly," *United States v. McKnight*, 2020 WL 1872412, at *2, a justification that would apply to many defendants cannot possibly satisfy the standard for temporary release. Raoult can have private conversations with his attorneys to prepare his defense, just as other defendants do. Similarly, Raoult's desire to reconnect with his family is not a compelling reason for temporary release. Again, many defendants would like to reconnect with their families. Courts have routinely rejected temporary release requests for family reasons, including requests for much more emergent family reasons, like funerals. *See, e.g.*, *Toledo Pardo*, 2023 WL 4641055, at *1-*2; *Schley*, 2023 WL 2890384, at *1; *Rowelette*, 2022 WL 2531815, at *1.

Besides, Raoult will actually be able to spend more time with his parents than he expected at the time of filing his motion. Although the standard social visitation schedule permits visits only on Saturdays and Sundays because of the need to save weekday time for legal visits, FDC SeaTac has now made special accommodations for Raoult in light of his parents' trip from France. Raoult's parents have scheduled their trip for only six full

Government's Opposition to Motion for Temporary Release - 10
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

days in Seattle, and the FDC is making special arrangements so that his parents can visit him on four of those days.[2]

### D. Proposed Release Conditions Cannot Sufficiently Mitigate the Risks

Regardless of whether Raoult presented a potentially qualifying reason for temporary release, there would be no conditions that would reasonably assure that Raoult would not flee from the United States if he were released. Raoult's motion proposes GPS location monitoring, his parents as third-party custodians, and taking away his parents' passports in addition to his own. Def. Mot. at 4. However, none of those would be sufficient.

Neither taking away passports nor GPS location monitoring is a foolproof means of preventing a defendant's flight. Defendants whose passports have been taken away may find other methods to escape. For example, Raoult could escape using false identification documents. GPS location monitoring is also inadequate to ensure appearance, because defendants can remove the GPS monitoring device. These concerns are not hypothetical. The undersigned government attorney has personally had a defendant cut off his GPS monitoring device and flee the country without having access to his passport. *See United States v. Orel Gohar*, No. 2:17-cr-00232, ECF No. 392 at 16 (E.D. Cal. Nov. 17, 2020). Colleagues in this district have shared that experience with defendants removing GPS devices and fleeing. *See United States v. Ricky George*, No. 2:15-cr-0072, ECF No. 15 at 4 (W.D. Wash. Mar. 30, 2015). Just last week, a defendant whose passport had been taken away failed to appear for sentencing in this district after informing the court by email that he had to leave the country. *See United States v. Volodimyr Pigida*, No. 2:18-cr-294, ECF No. 278 (W.D. Wash. Aug. 4, 2023).

---

[2] Raoult's motion also asserts that he has been unable to talk to his parents by phone because he cannot call a French phone number from the FDC. Def. Mot. at 2. However, the government has been told that inmates at the FDC are able to dial international phone numbers, so perhaps Raoult needs to ask for further instruction from the FDC staff.

Government's Opposition to Motion for Temporary Release - 11
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Furthermore, Raoult's parents are not appropriate custodians to satisfy the requirements of 18 U.S.C. § 3142(i), particularly in light of the history of this case. As courts have recognized in other cases where defendants have requested temporary release, GPS monitoring and third-party guardianship by a defendant's father cannot sufficiently mitigate the risks when a defendant presents a significant risk of nonappearance and danger. *See Rowelette*, 2022 WL 2531815, at *1.

## IV.   CONCLUSION

The government urges the Court to deny Raoult's request for temporary release, as he has not presented a qualifying basis for temporary release and such release would give him the opportunity to act on his desire to avoid facing the criminal charges against him in the United States. Raoult is an extreme flight risk because he has both the desire and the potential means to leave the United States. He could return to France, from which the United States would be unable to extradite him. Not only would he not be held accountable for his crimes, but he could continue wreaking havoc through hacking companies in the United States and around the world, causing significant losses to those companies and subjecting their customers to identify theft.

DATED this 10th day of August, 2023.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

s/ Miriam R. Hinman
MIRIAM R. HINMAN
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:   (206) 553-7970
Fax:             (206) 553-4440

Government's Opposition to Motion for Temporary Release - 12
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970