THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR21-109-RSL |
| Plaintiff, | ) | REPLY REGARDING MOTION FOR TEMPORARY RELEASE TO LOCATION MONITORING FOR FAMILY VISITATION |
| v. | ) | |
| SEBASTIEN RAOULT, | ) | |
| Defendant. | ) | |

Sebastian Raoult, through Assistant Federal Public Defenders Vanessa Pai-Thompson, Dennis Carroll, and Mukund Rathi, moved for temporary release on location monitoring to visit his parents during their brief visit to the United States. The government's arguments opposing release are unpersuasive. Mr. Raoult's request should be granted. This Court should temporarily release Mr. Raoult because meeting with his parents and counsel together outside of prison is "necessary for preparation" of his and, additionally and separately, for his mental health, which is "another compelling reason" in this case given Mr. Raoult's age, vulnerability, and harrowing experience in a Moroccan prison. 18 USC § 3142(i).

I.      **LEGAL STANDARD**

The parties do not appear to disagree about the legal standard that applies to Mr. Raoult's motion for temporary release. While the government does not think that Mr. Raoult *should* be released, it agrees that the Court has the power to release Mr. Raoult. *Compare* Dkt. 34 at 3-4, *with* dkt. 36 at 5-6.

REPLY REGARDING MOTION FOR TEMPORARY RELEASE TO LOCATION MONITORING FOR FAMILY VISITATION
(*U.S. v. Raoult*, CR21-109-RSL) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Case 2:21-cr-00109-RSL   Document 38   Filed 08/14/23   Page 2 of 10

Contrary to the Bail Reform Act, however, the government's reply at times urges a higher standard of certainty, rather than reasonable assurance, that Mr. Raoult will appear for court. *See, e.g.*, Dkt. 36 at 2, 11 (describing inability to "ensure" Mr. Raoult's return to custody and community safety). As this Court knows and the government acknowledges elsewhere in its reply, certainty is not the standard—reasonable assurance is. *Id.* at 11; 18 U.S.C. §§ 3142(c), (e)-(i).

18 U.S.C. § 3142(f) requires the government to show clear and convincing evidence that temporarily releasing Mr. Raoult will not reasonably assure the safety of the community, meaning that it is "highly probable or reasonably certain" that he poses a danger. *See United States v. Jordan*, 256 F.3d 922, 930 (9th Cir. 2001) (quoting Black's Law Dictionary). The Constitution requires the government to show the same level of evidence as to his nonappearance.

Mr. Raoult "has a basic and significant liberty interest in not being confined pending trial." *United States v. Motamedi*, 767 F.2d 1403, 1414 (9th Cir. 1985) (Boochever, J., concurring in part). Under *Addington v. Texas*, "the proper burden of proof is determined by weighing the magnitude of the societal and individual interests at stake in the determination, and assigning the risk of error accordingly." *Id.* (citing 441 U.S. 418, 425–27 (1979)). Pretrial detention infringes a liberty interest "more substantial than mere loss of money," *Addington*, 441 U.S. at 424 (civil commitment), and thus requires clear and convincing evidence. *Motamedi*, 767 F.2d at 1414 (Boochever, J.).

Some courts addressing other pretrial detention issues say the preponderance standard is "usually applied in pretrial proceedings." *See, e.g.*, *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (citing *United States v. Freitas*, 602 F.Supp. 1283 (N.D.Cal. 1985)). But *Freitas* cited cases about admitting evidence, not taking away an accused person's liberty. 602 F.Supp. at 1293, citing *Lego v. Twomley*, 404 U.S. 477

REPLY REGARDING MOTION FOR TEMPORARY
RELEASE TO LOCATION MONITORING FOR FAMILY
VISITATION
(*U.S. v. Raoult*, CR21-109-RSL) - 2

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

(1972) (voluntariness of a confession); *United States v. Matlock*, 415 U.S. 164 (1974) (consent to a search).

The government must show that temporarily releasing Mr. Raoult will not reasonably assure safety *and* his appearance. "[T]he Bail Reform Act [does not] authorize[] pretrial detention without bail based solely on a finding of dangerousness." *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003). Even under a preponderance of the evidence standard for flight risk, however, the government cannot show that Mr. Raoult must be detained.

## II. THIS COURT SHOULD RELEASE MR. RAOULT WITH CONDITIONS INCLUDING HOME DETENTION, THIRD PARTY CUSTODIANS, AND HIS PARENTS' PASSPORT SURRENDER.

### A. This Court should not deny Mr. Raoult temporary release because he exercised his rights and his father advocated for him during the extradition process.

The government argues that Mr. Raoult and his family's efforts *legally* advocating on his behalf during the extradition process is a basis to deny his motion for temporarily release. Dkt. 36 at 4-5. It further points to a newspaper article during which Mr. Raoult is described expressing hope that people might use legal methods to pursue his extradition to France instead of the United States and argues that this demonstrates he will flee. *Id.* The government's conclusion overshoots its evidence.

People are entitled to avail themselves of legal process. The government's arguments about Mr. Raoult litigating the extradition process and appealing for public support ultimately boil down to complaint that he did so. They do not, and cannot, connect the dots between trying to find legal remedies and not wishing imprisonment in the United States and inclination to flee active supervision to become an international fugitive. He did not seek to evade any criminal legal process and at most said he wanted to appear in French courts to fight his case there. He knows that is not an option now.

REPLY REGARDING MOTION FOR TEMPORARY
RELEASE TO LOCATION MONITORING FOR FAMILY
VISITATION
(*U.S. v. Raoult*, CR21-109-RSL) - 3

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

This Court should reject the government's "fire and brimstone" rhetoric that the factual record does not support.

### B. Mr. Raoult will have been interviewed by Pretrial Services prior to the hearing on his motion for temporary release.

Pretrial Services will interview Mr. Raoult at the Federal Detention center on August 15, 2023. Any arguments based on absence of information will likely be mooted by that interview.

### C. The government cannot establish clear and convincing or a preponderance of evidence that Mr. Raoult will fail to appear based on his alleged use of fake identities *online* and obtaining a fake identification unsuitable for international travel.

Mr. Raoult's alleged conduct is insufficient under any standard of proof to show that he will make and use fake travel documents for himself and his parents. First, obtaining and using someone's online username and password is not the same as and obtaining and presenting a fake passport to a Transportation Safety Administration (TSA) officer for scanning and inspection to board a plane. The ability and will to do one does not imply ability and will to do the other.

Second, the government cannot show that Mr. Raoult could still reach his alleged prior contacts who they state once helped him obtain a fake French identity card (akin to a state identity card in the United States), or that they would be willing to help him after his very public arrest. Additionally, the government's filings in this case make clear how closely his online activity has been scrutinized and the defense assumes that the government would similarly be watching Mr. Raoult if he were released given practice in this district. His circumstances would not be the same if the Court were to temporarily release him. This is particularly true since Mr. Raoult has proposed that this Court prohibit him from accessing the internet at all so *any* activity arguably tied to him would immediately throw up a red flag.

REPLY REGARDING MOTION FOR TEMPORARY RELEASE TO LOCATION MONITORING FOR FAMILY VISITATION
(*U.S. v. Raoult*, CR21-109-RSL) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Third, a fake French identity card would not even allow Mr. Raoult to travel to France, according to a French Consulate website:

> The following countries accept the national identity card as a travel document:
> - European Union countries : Germany, Austria, Belgium, Bulgaria, Cyprus, Croatia, Denmark, Spain, Estonia, Finland, Greece, Hungary, Ireland, Italy, Latvia, Lithuania, Luxemburg, Malta, the Netherlands, Poland, Portugal, Romania, United Kingdom, Slovakia, Slovenia, Sweden, Czech Republic;
> - From the Schengen zone : Iceland, Liechtenstein, Norway, Switzerland;
> - Andorra, Monaco, the Vatican, San Marino;
> - Albania, ex/former Yugoslavian Republic of Macedonia, Bosnia-Herzegovina, Montenegro, Serbia ;
> - Turkey;
> - Egypt;
> - Tunisia (only for those with dual citizenship or those taking part in group trips organized by a travel agent);
> - Morocco (only for those with dual citizenship or those taking part in group trips organized by a travel agent).
>
> Translated fact sheets for all these countries are available for download on the website of the Ministry of the Interior.
>
> To avoid any inconveniences during your stay, **you are urged to consider using a valid passport as opposed to an expired national ID card**, even if it's considered valid by the French authorities.

Consulate General of France in Cape Town website (available at: https://lecap.consulfrance.org/National-Identity-Card). Forging a passport that would pass TSA inspection is manifestly more difficult than forging something akin to a driver's license that would have been looked at in passing. The government cannot show that Mr. Raoult has connections to someone who could forge and provide three passports to him in the United States in less than a week.

Finally, Mr. Raoult's parents would not go along with such a plan to help him get out of the country. Nothing the government alleges comes even close to showing that Mr. Raoult's parents would make themselves accessories to a federal crime in the United States (particularly while their own passports were lodged at the courthouse.) Mr. Raoult's father advocated for his son through legal means during the extradition process, just as most parents would. The government seems to have assumed the worst about Mr. Raoult's parents. The Court cannot, however.

Nothing about advocating for their son to return to France to face the French legal system, or about calling attention to his conditions of confinement, suggest that

REPLY REGARDING MOTION FOR TEMPORARY RELEASE TO LOCATION MONITORING FOR FAMILY VISITATION
(*U.S. v. Raoult*, CR21-109-RSL) - 5

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Mr. Raoult's parents would turn a blind eye to unlawful behavior, help him flee justice, or commit crimes themselves.

### D. The cases to which the government cites do not apply to Mr. Raoult, who has no history of violence or failures to appear, and would have strict conditions and excellent supervision in this district.

Mr. Raoult is unlike the accused persons in *Toledo Pardo*, *Schley*, and *Rowelette*, who had prior convictions for offenses involving violence or weapons, failures to appear, or both. Courts denied temporary release to Mr. Schley and Mr. Rowelette after previously detaining them pending supervised release violations for alleged new criminal conduct. Mr. Schley's alleged violations led to new charges. *See United States v. Schley*, 2:22-cr-00166-JCC-1, Dkt. 1. Mr. Rowelette's alleged violations were for alleged felony harassment, first degree assault, and possessing a firearm. *United States v. Rowelette*, 2022 WL 2531815, at 1 (W.D. Wash. 2022). Mr. Toledo Pardo had three prior convictions, including two related to domestic violence, was arrested while violating a no contact order, and had "repeated failure[s] to appear." *United States v. Toledo Pardo*, 2023 WL 4641055, at 1 (W.D. Wash. 2023).

The government points to only three cases where passport surrender and/or GPS monitoring were insufficient to keep a person from fleeing. Dkt. 36 at 11. The out-of-district case, *United States v. Orel Gohar*, No. 2:17-cr-00232, does not speak to the effectiveness of United States Pretrial Services *in this district*. As the Court is aware, the Western District of Washington has one of the highest pretrial release rates in the country—owing in large part to how effective our Pretrial Services office is. A single experience in another district is simply unhelpful in this context.

Underscoring this, the government had to reach back over nine years to find a case in this district where a person fled while on GPS monitoring. Dkt. 36 at 11 (citing

REPLY REGARDING MOTION FOR TEMPORARY RELEASE TO LOCATION MONITORING FOR FAMILY VISITATION
(*U.S. v. Raoult*, CR21-109-RSL) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

*United States v. Ricky George*, No. 2:15-cr-0072).[1] This demonstrates that Pretrial Services effectively supervises people in this district. And unlike Mr. Raoult, Mr. George had failed to appear in court many times over a period of years. *George*, 2:11-cr-00208-RAJ, dkt. 63 at 4. The government summarized this nonappearance history as follows:

> Defendant's Criminal History Category of I is extremely misleading and solely the result of his failure to address pending charges. Between 2008 and 2013, defendant was charged in six different matters. PSR ¶¶ 30-35. Defendant failed to appear in all six matters, resulting in the issuance of warrants in all proceedings. The charges include the theft of credit cards and fraudulent use of those cards; an attempt to purchase a car with financing obtained under another person's identity, theft, and various incidents of providing false names to police officers.
>
> In addition, the PSR identifies seven more arrests for offenses including theft, identity theft and driving without a license. The PSR notes that defendant had numerous failures to appear in connection with these matters as well. PSR ¶ 43.

*Id.* (Government's sentencing memorandum). Also unlike Mr. Raoult, Mr. George was not living and under supervision in this district when he fled. *Id.*, dkt. 56 at 2-3 (motion for bond modification) (describing supervision in the Central District of California). Finally, the government points to *United States v. Volodimyr Pigida*, No. 2:18-cr-294, which did not involve location monitoring or a third-party custodian, like Mr. Raoult proposes. Dkt. 22.

Over many years, Pretrial Services in this District has consistently demonstrated to the Court that it has the skill and capacity to successfully supervise people in the community. *See, e.g., United States v. Read*, No. 2:22-cr-00059-RSM-1 (released in aggravated identity theft and fraud case, on bond for over one year, surrendered for 36-

---

[1] The government subsequently charged Mr. George with failing to report for a sentence. The government cites the plea agreement in that case, which describes the failure to surrender in 2014.

| REPLY REGARDING MOTION FOR TEMPORARY RELEASE TO LOCATION MONITORING FOR FAMILY VISITATION<br>(*U.S. v. Raoult*, CR21-109-RSL) - 7 | **FEDERAL PUBLIC DEFENDER**<br>1601 Fifth Avenue, Suite 700<br>Seattle, Washington 98101<br>(206) 553-1100 |

month sentence); *United States v. Scott*, No. 2:21-cr-00072-RSL-1 (released in enticement of a minor case, complied with bond for roughly 10 months, surrendered for 120-month sentence); *United States v. Holcomb*, 2:21-cr-00075-RSL-1 (released in production of child pornography case, complied with bond for approximately two years, remanded following imposition of 240-month sentence); *United States v. Taylor*, 2:21-cr-00193-RSM-1) (released in wire fraud case, complied with bond for over one year, surrendered for 27-month sentence); *United States v. Hurd*, 2:20-cr-00156-RSM-1 (released in aggravated identity theft and bank fraud case, complied with bond for over 2.5 years, surrendered for 30-month sentence); *United States v. Morrill*, 3:20-cr-05443-BHS-1; (released following denial of government appeal of release in child pornography production case, complied with bond for over one year, surrendered for 240-month sentence); *United States v. Lozier*, 3:20-cr-05059-BHS-1 (released while facing child pornography receipt charge, complied with bond for over 17 months, surrendered for 24-month sentence); *United States v. Gilbert*, 2:20-cr-00170-RSM-1 (released while charged with child pornography possession, complied with bond for two years, sentenced to time served); *United States v. Deroche*, 2:19-cr-00197-RSL-1 (released while facing child pornography receipt charges, complied with bond for nearly two years, sentenced to probation); *United States v. Jelmberg*, 3:18-cr-05538-BHS-1 (released following denial of government appeal of release while facing aggravated sexual abuse of a child charges, complied with bond for approximately 2.5 years, surrendered for 96-month sentence).

      E.     **Courts in this district have granted temporary release.**

Courts in this district have granted temporary release where appropriate. *See, e.g.*, *United States v. Spenser*, 3:21-cr-05291-DGE-1 (spending time with children following son's death); *United States v. Wilcher*, 3:19-cr-05277-BHS (release for

REPLY REGARDING MOTION FOR TEMPORARY RELEASE TO LOCATION MONITORING FOR FAMILY VISITATION
(*U.S. v. Raoult*, CR21-109-RSL) - 8

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

medical appointment with USMS escort); *United States v. Atofau*, 2:17-cr-00153-JCC-1 (memorial service); *United States v. Gaines*, 2:16-cr-00211-RSL-1 (memorial service).

### F. Extended FDC visitation does not address the need for Mr. Raoult, his parents, and counsel to meet privately.

The government does not address the defense's argument regarding need for Mr. Raoult, defense counsel, and Mr. Raoult's parents to meet together. The defense noted this because of its importance at this juncture of the case. Dkt. 34 at 3. Mr. Raoult is young and facing a tremendously important decision about whether to proceed to trial or enter into a plea agreement. It bears emphasis that Mr. Raoult is very young and still in a phase of life where people routinely consult with and rely upon their parents in making major decisions. Defense counsel believe that allowing him to be released temporarily will facilitate this process in a way that meeting at the FDC cannot.

First, defense counsel, Mr. Raoult, and his parents cannot effectively meet together to discuss his case at the FDC. The public visitation area at the FDC becomes crowded and the physical setting—lines of chairs facing one another—lacks privacy and confidentiality. Social visitors are not allowed to use the counsel visit rooms.

Second, speaking with loved ones by phone[2] or in a public visitation area does not allow for full and meaningful discussion for someone in Mr. Raoult's position. As the defense described in its initial motion, "[t]he computers with email access are in a public space in his jail unit, where it is not safe for a young, slight man to become visibly emotional." Dkt. 34 at 2. The government ignores this reality. It is a sad and unfortunate truth that young people, particularly physically slight young people, are

---

[2] Counsel is investigating the government's belief that Mr. Raoult can call France directly from the FDC, counsel's understanding has been that he cannot. Even if France is available for direct-dial, the BOP's website indicates those calls would cost $0.99 per minute. BOP website, "Long Distance Phone Rates Reduced" page (available at: https://www.bop.gov/resources/news/20140212_reduced_phone_rate.jsp). Mr. Raoult cannot afford that.

REPLY REGARDING MOTION FOR TEMPORARY RELEASE TO LOCATION MONITORING FOR FAMILY VISITATION
(*U.S. v. Raoult*, CR21-109-RSL) - 9

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

uniquely vulnerable to exploitation and harassment within a jail setting. In counsel's experience, incarcerated people, even those who are less vulnerable in custody than Mr. Raoult, are reticent to be openly emotional in public areas because being viewed as "weak" can place a target on their backs. Indeed, counsel routinely waits with clients in the private counsel visit room after they have cried while they collect themselves enough to feel comfortable re-entering a public space.

### III. CONCLUSION

This Court should temporarily release Mr. Raoult to spend time with his parents while they are in Seattle and meet jointly with them and counsel. He outlined conditions in his initial motion that would reasonably assure Mr. Raoult's return to the FDC and the safety of the community during his brief release to location monitoring and his parents' custody. The government fails to show that this *combination* of conditions is insufficient.

DATED this 14th day of August 2023.

Respectfully submitted,

s/ *Dennis Carroll*
s/ *Vanessa Pai-Thompson*
s/ *Mukund Rathi*
Assistant Federal Public Defenders
Attorneys for Sebastien Raoult

REPLY REGARDING MOTION FOR TEMPORARY RELEASE TO LOCATION MONITORING FOR FAMILY VISITATION
(*U.S. v. Raoult*, CR21-109-RSL) - 10

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100