The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>SEBASTIEN RAOULT,<br><br>Defendant. | NO. CR21-109 RSL<br><br>GOVERNMENT'S OPPOSITION TO RAOULT'S APPEAL FROM THE DENIAL OF TEMPORARY RELEASE |

Judge Peterson correctly denied temporary release to Sebastien Raoult, who was extradited to the United States for significant computer hacking offenses and has not demonstrated a qualifying reason for temporary release. Raoult has been charged with hacking activities as a member of the ShinyHunters group, which hacked and sold stolen data from many American and foreign companies. Raoult and his family went to great lengths to try to prevent his extradition from Morocco to the United States and to try to bring him back to France, from which the United States would be unable to extradite him. Raoult and his family have been vocal to media outlets about their anger that Raoult would be subject to the U.S. criminal justice system. The government is concerned that

Government's Opposition to Appeal re Temporary Release - 1
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Raoult may also have the means to flee, because he has experience using false identification information, there are conspirators out of custody who could help to orchestrate his escape, and the ShinyHunters group's hacking activities generated substantial profits that could facilitate an escape. If Raoult were out of custody, he would pose a financial danger to individuals and companies in the U.S. and around the world.

As Judge Peterson concluded, Raoult's desire to spend a week with his parents is not necessary for preparation of his defense or for another compelling reason, so he does not qualify for temporary release. Raoult claims that he needs time to reconnect with his parents, but the FDC has already made special accommodations for his parents to have extended visits. Raoult claims that he needs temporary release to be able to have private joint meetings with his parents and defense counsel, but the FDC has confirmed that Raoult can have those private joint meetings in the legal visitation rooms at the FDC. Even if Raoult had a qualifying reason for temporary release, neither taking away passports nor GPS location monitoring could reasonably assure Raoult's appearance, as defendants have fled with those measures in place in the past.[1]

### I.    BACKGROUND

An indictment charges Raoult and two co-conspirators with nine offenses related to their prolific hacking activities as part of the ShinyHunters hacking group. ECF No. 1. The indictment charges Raoult with conspiracy to commit computer fraud and abuse, conspiracy to commit wire fraud, wire fraud, and aggravated identity theft. ECF No. 1.

As alleged in the indictment, Raoult and his co-conspirators in the ShinyHunters group used phishing campaigns to steal login credentials, which they used to access companies' confidential data. ECF No. 1 at 2. The ShinyHunters group hacked millions of customer records, including personal and financial information. ECF No. 1 at 2-3, 9-11. The ShinyHunters group sold hacked data, demanded ransoms from victim

---

[1] In this memorandum, the government presents the same arguments that it presented to the magistrate court, with some clarifications and updated information about visitation at the FDC.

Government's Opposition to Appeal re Temporary Release - 2
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

companies, and leaked stolen data to promote themselves. ECF No. 1 at 2. They marketed and promoted hacked data from more than 60 companies. ECF No. 1 at 2.

The evidence shows that Raoult was instrumental in developing the software code and phishing websites that the ShinyHunters group used for its hacking activities. He also participated directly in hacking companies. As the discovery shows, Raoult encouraged the sale of stolen data and talked about his ability to find buyers who wanted to use individuals' stolen credit card numbers. *See, e.g.*, SH-00085429.

The loss to victims and the profit to ShinyHunters were both substantial. The government has not yet collected loss information from nearly all of the victim companies, but the reported losses so far amount to millions of dollars. Customers whose personally identifiable information and financial information was stolen likely also suffered substantial collective losses from identity theft. Meanwhile, the ShinyHunters members profited from ransoms and the sale of hacked data. Individual databases frequently sold for thousands of dollars and were sometimes even sold multiple times. The evidence includes ransom demands of up to $1.2 million.

Raoult is a French citizen but was arrested on the charges in this indictment in Morocco. Since his arrest, Raoult and his family have strenuously opposed his extradition to the United States, have attempted to get him to France instead, and have expressed anger that Raoult would face criminal charges in the United States.

Raoult and his family have been very public about their desire to avoid having Raoult face the U.S. criminal justice system. For example, a French media outlet published a letter that Raoult reportedly dictated to his father from Moroccan prison while the U.S. extradition request was pending. Exhibit 1, Translation of French Article from L'Obs; *Je me refuse a croire que la France m'a abandonne au sort de la justice americaine*, L'Obs, October 3, 2022, https://www.nouvelobs.com/justice/20221003.OBS64004/je-me-refuse-a-croire-que-la-

Government's Opposition to Appeal re Temporary Release - 3
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

france-m-a-abandonne-au-sort-de-la-justice-americaine.html. In translation, Raoult's letter stated, "I am asking for help from the Ministry of Justice and the Ministry of Foreign Affairs, and, if necessary, from the President of the Republic in order to take action and do anything necessary in order to make the United States drop the charges against me. I am asking for the case to be referred to the French judicial system, whose proceedings will enable me to plead my innocence according to the laws of the Republic." Raoult stated that he "refuse[d] to believe . . . that the French State can abandon me to the mercy of the American judicial system." Raoult declared, "My place is not here, nor do I have anything to do in the United States. My place is in France . . . ."

Raoult's father has also been vocal about his opposition to Raoult having to face the U.S. criminal justice system. *See, e.g.*, *Sebastian Raoult's Father: My Son Was Sold to the Americans*, Morocco World News, August 9, 2022, https://www.moroccoworldnews.com/2022/08/350703/sebastian-raoults-father-my-son-was-sold-to-the-americans. According to that article, Raoult's father "expressed his anger at a Moroccan court's decision to approve of his son's extradition to the United States." The article quoted Raoult's father as saying, "My son was betrayed by France. He was sold to the Americans."

Raoult and his family have acted on their sentiments by going to extreme lengths to try to prevent Raoult from facing the indictment in the United States. In addition to fighting the extradition proceedings in Morocco, Raoult's family and French attorney have lobbied the French government to extradite Raoult to France, and they tried to block the extradition to the United States by petitioning the U.N. Committee Against Torture, claiming that the potential sentence would constitute inhumane treatment. *See Counsel for Alleged Member of ShinyHunters Tries a Legal 'Hail Mary' Play to Block Extradition*, DataBreaches, December 28, 2022, https://www.databreaches.net/counsel-for-alleged-member-of-shinyhunters-tries-a-legal-hail-mary-play-to-block-extradition/.

Government's Opposition to Appeal re Temporary Release - 4
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Despite the extensive efforts by Raoult and his family to prevent the United States from obtaining custody of Raoult, Morocco granted the extradition request by the United States. Raoult made his initial appearance in Seattle on January 27, 2023.[2] ECF No. 18. Raoult declined to be interviewed by Pretrial Services and stipulated to detention. The Court detained him as a flight risk and a danger, noting that he "fought extradition to the United States" and "has no known ties to the United States." ECF No. 21.

## II.   RAOULT'S REQUEST FOR TEMPORARY RELEASE

Raoult has requested temporary release for six days so that he can stay with his parents at a hotel at SeaTac Airport while they are visiting from France. He claims that temporary release is justified so that he can "meet jointly with his parents and counsel" and have extended time to reconnect with his parents. Def. Appeal at 2, ECF No. 43.

The government has already worked with the defense and FDC SeaTac to obtain special accommodations for Raoult's parents to have extended visiting dates and times. Although the standard social visitation schedule permits visits only on Saturdays and Sundays because weekdays are reserved for legal visits, the FDC has made special arrangements for Raoult in light of his parents' trip from France. Raoult's parents have scheduled only six full days in Seattle, and the FDC is making special arrangements so that his parents can visit him on four of those days. In addition, the government reached out to the FDC on August 17, 2023, for clarification about the privacy of visits. An FDC attorney confirmed that if Raoult's parents visit the FDC with Raoult's attorneys, they will all be able to meet privately in a legal visitation room with no monitoring.

Judge Peterson heard oral arguments on Raoult's request for temporary release on August 16, 2023, and denied the request based on her determination that release was not necessary for preparation of his defense or for another compelling reason. She emphasized the fact that Raoult would be able to have extended visits with his parents at

---

[2] FBI obtained parole for Raoult to enter the country in U.S. custody. Because that parole was granted on the understanding that Raoult would be in U.S. custody, FBI has notified ICE about this request for release.

Government's Opposition to Appeal re Temporary Release - 5
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the FDC and could meet privately with defense counsel, as all inmates do to prepare their defenses. She did not know that Raoult would also be able to meet privately with both his parents and defense counsel, as the government had not yet learned that information.

### III. LEGAL STANDARD

A court may grant temporary release only if it is "necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). "A defendant bears the burden of establishing circumstances warranting temporary release." *United States v. Schley*, 2023 WL 2890384, at *1 (W.D. Wash. Apr. 11, 2023); *United States v. Toledo Pardo*, 2023 WL 4641055, at *1 (W.D. Wash. July 20, 2023); *see United States v. Hoover*, 2020 WL 3979853, at *1 (9th Cir. May 22, 2020) (affirming denial of temporary release because "appellant has not shown that his release is warranted"). "The relief authorized by § 3142(i) is to be used 'sparingly.'" *United States v. McKnight*, 2020 WL 1872412, at *2 (W.D. Wash. Apr. 15, 2020); *United States v. Noland-James*, 2020 WL 1904049, at *2 (W.D. Wash. Apr. 17, 2020); *United States v. Green*, 2020 WL 2063664, at *3 (W.D. Wash. Apr. 29, 2020); *Toledo Pardo*, 2023 WL 4641055, at *1.

When deciding whether to grant temporary release to a defendant with a qualifying reason, courts in this district have begun by considering "the original grounds for a defendant's pretrial detention." *United States v. Jackson*, 2022 WL 4466183, at *1 (W.D. Wash. Sept. 26, 2022). Courts have then considered "the strength of the defendant's interest in the requested furlough" and "whether the proposed release plan strikes an appropriate balance among these considerations." *Id.* When the original grounds for detention have not changed, courts routinely reject defendants' requests for release in the custody of family members for family reasons, such as funerals. *See, e.g.*, *Toledo Pardo*, 2023 WL 4641055, at *1-*2; *Schley*, 2023 WL 2890384, at *1; *United States v. Rowelette*, 2022 WL 2531815, at *1 (W.D. Wash. July 7, 2022).

Government's Opposition to Appeal re Temporary Release - 6
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# IV. ARGUMENT

As explained below, Raoult presents a flight risk and a danger, especially given the significant hacking charges that he faces and his ability to return to a non-extraditable country. Raoult has not established a reason that temporary release is necessary to prepare his defense or for another compelling reason, so he cannot qualify for temporary release pursuant to 18 U.S.C. § 3142(i). Furthermore, there are no conditions of temporary release that could adequately mitigate the risks of flight and danger.

## A. Flight Risk

Raoult poses an extreme risk of flight because he has both the motive and the potential means to flee. Raoult has an incentive to flee from the serious charges that he faces. Raoult would receive at least a mandatory minimum sentence of two years in prison, if he were convicted on a count of aggravated identity theft. It is likely that he would face a substantially higher sentence. As described above, the known loss to victims is in the millions of dollars, and the known loss is expected to increase as the government obtains information from additional victims. Thus, the government anticipates a Sentencing Guidelines range calling for substantial prison time.

Raoult's motive to flee is enhanced by the fact that the United States would be unable to extradite him if he returned to France. Under French law, France will not extradite its own citizens. As the French Ministry of Justice has explained, "the fact that the wanted individual is a French national constitutes an insuperable obstacle to his/her removal." Letter from the French Ministry of Justice, *United States v. Ghislaine Maxwell*, No. 1:20-cr-330, ECF No. 165-1 (S.D.N.Y. Mar. 9, 2021). If Raoult fled to France, he could avoid facing the significant charges brought by the United States.

This case presents an unusually concrete picture of Raoult's desire to avoid facing charges in the United States, because Raoult and his family have stated that position explicitly to the media on numerous occasions. As described above, Raoult dictated a

Government's Opposition to Appeal re Temporary Release - 7
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

letter from Moroccan prison in which he declares that he does not want to face the American judicial system and his place is in France.  *See* Exhibit 1.  Raoult's father has expressed anger about Raoult's extradition to the United States.  Raoult and his family have tried to prevent him from facing the U.S. charges by fighting the extradition process in Morocco, appealing to the French government to bring him back to France, and petitioning the U.N. Committee Against Torture.  Contrary to the defense's claims, courts routinely find that a defendant's fight against extradition supports a finding of flight risk. *See, e.g.*, *United States v. Bush*, No. CR06-5504RBL, 2008 WL 2001816, at *1 (W.D. Wash. May 7, 2008); *United States v. Amar*, 300 F. Supp. 3d 287, 290, 292 (D.D.C. 2018); *United States v. Botero*, 604 F. Supp. 1028, 1034 (S.D. Fla. 1985).

In addition to Raoult having a motive to flee, Raoult's history and connections could give him the means to flee.  In particular, Raoult could obtain false identification documents that would facilitate an escape, even without his passport.  Raoult is no stranger to possessing stolen and fake identities.  The charged offenses involved using other people's access credentials to breach companies' accounts.  Raoult and his co-conspirators also used false identities to register for malicious domains and online accounts that were used to execute the hacking scheme.  *See* ECF No. 1 at 4.  Then, from the breached companies, the hackers stole vast amounts of personally identifiable information.  That stolen information was valuable precisely because it could be used to commit identity theft.  The ShinyHunters group sold hacked data on the same dark web forums where there were also sales of passports and other fake identification documents.

Raoult had the connections to obtain false identification documents for himself, as the discovery for this case demonstrates.  For example, Raoult possessed a fake French national identity card in the name "Sezyo Kaisen," a moniker that Raoult frequently used.  SH-00079746.  Raoult also participated in online conversations about using fake identification documents, including fake French national identity cards.  In one

Government's Opposition to Appeal re Temporary Release - 8
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conversation, Raoult asked his correspondent how that person made fake identification documents, the correspondent responded that he used Photoshop, Raoult asked if the correspondent would make fake identification documents as verification for PayPal, and the correspondent agreed. SH-00085369. Raoult then provided the false name and address that he wanted on the false identification documents. *Id.* Raoult's history thus suggests that he would have access to stolen identity information and false identification documents, should he wish to obtain such false documents to facilitate an escape.[3]

Raoult would likely have additional resources to orchestrate an escape. First, he may have access to substantial funds. As described above, the charged hacking activities generated large profits for Raoult and his co-conspirators. Since Raoult has not had a standard Pretrial Services interview covering his financial resources, that information is not available to the Court. Second, Raoult has charged and uncharged conspirators who are out of custody. Those individuals, who also have experience with stolen and false identification information and have obtained substantial proceeds from hacking, could assist Raoult. With both the expressed desire and the likely means to avoid facing criminal charges in the United States, Raoult presents a very significant flight risk.

### B. Danger to the Community

If Raoult were released from custody, he would also pose a financial danger. As discussed above, Raoult and his co-conspirators inflicted very significant financial harm through their hacking activities. The ShinyHunters group marketed hacked data from more than 60 companies. The known loss to companies is in the millions and expected to

---

[3] Defense counsel has stated that a French national identity card "would not even allow Mr. Raoult to travel to France." *See* Def. Reply at 5, ECF No. 38; Hr'g Rec. at 16:30 (claiming that France would not accept it). Counsel cited a French consulate website that listed countries that would accept a French national identity card and did not list France. In fact, French nationals can use national identity cards to travel to and from France, the EU, and a number of other countries. *See, e.g.*, Travel Documents for EU Nationals, https://europa.eu/youreurope/citizens/travel/entry-exit/eu-citizen/index_en.htm; ID Documents, https://www.lyonaeroports.com/en/practical-informations/practical-guide-documents. Thus, Raoult could use a French national identity card to enter France, although he could not use it to fly directly from the United States to France. In any case, the specifics of a particular false ID are not especially important to the government's broader point, which was that Raoult could access false identification documents, potentially including passports.

Government's Opposition to Appeal re Temporary Release - 9
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

increase. ShinyHunters hacked and sold millions of individuals' personal identifiable and financial information, subjecting them to identity theft and financial harm.

Raoult played an instrumental role in developing the code and phishing websites that he and his co-conspirators used to trick victims into giving up their access credentials, and Raoult talked about how much he loved working on the phishing scam. Raoult was unsympathetic to the harm caused by his hacking activities, urging the sale of hacked data to buyers who wanted to steal credit card numbers.

If Raoult were not in custody, he could resume his hacking, even working with co-conspirators who are not in custody. If he fled to France, the United States would be unable to extradite him, and he could continue inflicting harm on U.S. victims.

**C.     Reasons for Requesting Temporary Release**

Although the government is sympathetic to Raoult's desire to spend time with his parents, he has not established that temporary release is necessary for preparation of his defense or for another compelling reason. First, Raoult argues that release is necessary to prepare his defense because he needs to meet jointly with his parents and counsel. Def. Appeal at 2. Raoult claims that the lack of privacy at the FDC means that "defense counsel, Mr. Raoult, and his parents cannot effectively meet together to discuss his case at the FDC." Def. Reply at 9; Hr'g Rec. at 13:12. Raoult also argues that he "desperately wants to be able to speak openly with his parents" without FDC guards in earshot. Def. Mot. at 3. However, the FDC has confirmed to the government that if Raoult's parents visit with Raoult's attorneys, they will all be able to meet privately in a legal visitation room with no monitoring. Therefore, counsel's argument appears to rely on a mistaken assumption about the FDC. There is no need to release Raoult for joint meetings with his parents and counsel, since he can have those private meetings at the FDC.

Second, Raoult argues that release is necessary to allow him to reconnect with his parents. Def. Appeal at 2. However, the government has already worked with defense counsel and the FDC to obtain special accommodations so that Raoult's parents can visit

Government's Opposition to Appeal re Temporary Release - 10
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the FDC on four out of the six full days that they are in Seattle.  There is no precedent for defense counsel's argument that Raoult should be able to have even more time and needs to spend nights with his parents.  When courts have granted temporary release to spend time with family, it has been for much more compelling and emergent reasons, such as a death or the need to set up a support system for a young child.  *See, e.g.*, *Jackson*, 2022 WL 4466183, at *1.  Many inmates feel isolated from their families, have had tough experiences, and could argue that reconnecting with their families outside the FDC would improve their mental health.  Since temporary release is to be used "sparingly," *United States v. McKnight*, 2020 WL 1872412, at *2, a justification that would apply to many defendants cannot satisfy the standard for temporary release.  Raoult will be able to reconnect with his parents and have private meetings with his parents and counsel at the FDC, so he has not established any qualifying reason for temporary release.[4]

### D.     Proposed Release Conditions Cannot Sufficiently Mitigate the Risks

Regardless of whether Raoult presented a potentially qualifying reason for temporary release, there would be no conditions that would reasonably assure that Raoult would not flee from the United States if he were released.

Neither taking away passports nor GPS location monitoring is a foolproof means of preventing a defendant's flight.  Defendants whose passports have been taken away may find other methods to escape.  For example, Raoult could escape using false identification documents.  GPS location monitoring is also inadequate to assure appearance, because defendants can remove the GPS monitoring device or flee before authorities have a chance to respond.  Raoult's proposal to stay at an airport hotel and be permitted in a travel zone around that hotel makes GPS monitoring especially inadequate.

---

[4] Raoult's motion also asserts that he has been unable to talk to his parents by phone because he cannot call a French phone number from the FDC. Def. Mot. at 2. However, the government has been told that inmates at the FDC are able to dial international phone numbers, so perhaps Raoult needs to ask for further instruction from the FDC staff.

Government's Opposition to Appeal re Temporary Release - 11
*United States v. Raoult*/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The undersigned government attorney has personally had a defendant cut off his GPS device and flee the country without having his passport. *See United States v. Orel Gohar*, No. 2:17-cr-00232, ECF No. 392 at 16 (E.D. Cal. Nov. 17, 2020). Colleagues in this district have shared that experience with defendants removing GPS devices and fleeing. *See United States v. Ricky George*, No. 2:15-cr-0072, ECF No. 15 at 4 (W.D. Wash. Mar. 30, 2015). Just two weeks ago, a defendant whose passport had been taken away failed to appear for sentencing in this district after informing the court by email that he had to leave the country. *See United States v. Volodimyr Pigida*, No. 2:18-cr-294, ECF No. 278 (W.D. Wash. Aug. 4, 2023).

Furthermore, Raoult's parents are not appropriate custodians to satisfy the requirements of 18 U.S.C. § 3142(i), particularly in light of the history of this case. GPS monitoring and third-party guardianship by a defendant's father cannot sufficiently mitigate the risks when a defendant presents a significant risk of nonappearance and danger. *See Rowelette*, 2022 WL 2531815, at *1.

### V.  CONCLUSION

The government urges the Court to deny Raoult's request, as he has not presented a qualifying basis for temporary release and such release would give him the opportunity to act on his desire to avoid facing the criminal charges against him in the United States.

DATED this 18th day of August, 2023.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/ Miriam R. Hinman*
MIRIAM R. HINMAN
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone: (206) 553-7970
Fax: (206) 553-4440

Government's Opposition to Appeal re Temporary Release - 12
United States v. Raoult/ CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970