Judge Robert S. Lasnik

FILED ____ ENTERED
LODGED ____ RECEIVED

SEP 27 2023

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ____ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SEBASTIEN RAOULT, <br><br> Defendant. | NO. CR21-109 RSL <br><br> **PLEA AGREEMENT** |

The United States, through Acting United States Attorney Tessa M. Gorman and Assistant United States Attorney Miriam R. Hinman of the Western District of Washington, and Defendant Sebastien Raoult and Raoult's attorneys, Dennis Carroll, Vanessa Pai-Thompson, and Mukund Rathi, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. **The Charges**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charges contained in the Indictment.

Plea Agreement - 1
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. Conspiracy to Commit Wire Fraud, as charged in Count 2, in violation of Title 18, United States Code, Sections 1349 and 3559(g)(1); and

b. Aggravated Identity Theft, as charged in Count 8, in violation of Title 18, United States Code, Section 1028A(a).

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements of the Offenses**. The elements of the offenses to which Defendant is pleading guilty are as follows:

   a. The elements of Conspiracy to Commit Wire Fraud, as charged in Count 2, are as follows:

   - First, beginning in or about November 2019, and ending in or about June 2021, there was an agreement between two or more persons to commit Wire Fraud, in violation of 18 U.S.C. § 1343; and
   - Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

   The elements of Wire Fraud, in violation of 18 U.S.C. § 1343, are as follows:

   - First, the defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;
   - Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;
   - Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Plea Agreement - 2
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Fourth, the defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

The elements of the sentencing enhancement at 18 U.S.C. § 3559(g)(1) are as follows:

- First, the defendant knowingly falsely registered a domain name; and
- Second, the defendant knowingly used that domain name in the course of the offense.

b. The elements of Aggravated Identity Theft, as charged in Count 8, are as follows:

- First, the defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person;
- Second, the defendant knew that the means of identification belonged to a real person; and
- Third, the defendant did so during and in relation to a violation of 18 U.S.C. § 1349, Conspiracy to Commit Wire Fraud.

3. **The Penalties**. Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

a. For the offense of Conspiracy to Commit Wire Fraud, as charged in Count 2: A maximum term of imprisonment of up to 27 years; a fine of up to $250,000; a period of supervision following release from prison of up to 5 years; and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to 5 years.

b. For the offense of Aggravated Identity Theft, as charged in Count 8: A mandatory term of imprisonment of 2 years, which must run consecutively to the term imposed on Count 2; a fine of up to $250,000; a period of supervision

Plea Agreement - 3
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

following release from prison of up to 1 year, and a mandatory special assessment of $100 dollars.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

4. **Immigration Consequences**. Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate

Plea Agreement - 4
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty pleas may entail, even if the consequence is Defendant's mandatory removal from the United States.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

   a. The right to plead not guilty and to persist in a plea of not guilty;

   b. The right to a speedy and public trial before a jury of Defendant's peers;

   c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

   d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

   e. The right to confront and cross-examine witnesses against Defendant at trial;

   f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

   g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

   h. The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines**. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense(s); (2) the

Plea Agreement - 5
*United States v. Sebastien Raoult*, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

    a. The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

    b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

    c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

    d. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8. **Statement of Facts.** The parties agree on the following facts. Defendant admits Defendant is guilty of the charged offenses:

Beginning by April 1, 2020, and continuing through at least the end of June 2020, the defendant Sebastien Raoult conspired with Gabriel Bildstein, Abdel-Hakim El

Plea Agreement - 6
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Ahmadi, and other co-conspirators to hack protected computers of corporate entities, including by using phishing emails to deceive recipients into disclosing login credentials. Often the conspirators breached companies by phishing the credentials for accounts at Provider-1, a U.S.-based computer code hosting and development platform. Raoult and his co-conspirators hacked many companies, causing millions of dollars in losses. From hacked companies, they stole confidential information and customer records, which contained personally identifiable information and financial information. They sold stolen data on dark web forums and sometimes demanded ransoms. Raoult participated in developing code and phishing websites for his and his co-conspirators' hacking activities, as well as hacking companies. Between July 2020 and at least June 2021, Raoult continued to conduct computer hacking activities with some of the same co-conspirators, including hacking companies through their employees' accounts at Provider-1.

Raoult and his co-conspirators used deceptive and fraudulent means to gain access to companies' protected computers and the data stored on those computers. One of the co-conspirators' most common attack vectors involved sending phishing emails to dupe recipients into disclosing access credentials, especially for accounts at Provider-1. Raoult and his co-conspirators used false names and addresses to register domain names for websites that spoofed the actual domains of legitimate service providers, such as Provider-1. They sent phishing emails to company employees purporting to be from Provider-1 and instructing the recipient to click on a link in the email, which directed the recipient to one of those phishing websites. The phishing websites spoofed login pages, requesting that victim employees enter their access credentials, such as username and password.

Raoult and his co-conspirators used the stolen usernames and passwords to access victim employees' accounts at Provider-1 and other service providers. For victim employees who had two-factor authentication set up, the phishing websites also prompted the victim employees to provide their authentication code, which the co-conspirators then used to breach their accounts. Raoult and his co-conspirators not only stole the data from the initial breached accounts, such as at Provider-1, but also searched those accounts for credentials to companies' networks and other third-party service providers, such as cloud storage services. Raoult and his co-conspirators used those additional stolen credentials to further breach the victim companies and steal additional data.

Raoult developed a substantial portion of the software code and phishing websites that he and his co-conspirators used to breach victim companies. Raoult maintained an account at Provider-1 with the username Sezyokzn, which he used to test numerous phishing websites that spoofed Provider-1's login page. Raoult also participated in hacking victims. For example, with respect to Count 8, Raoult knowingly used the stolen access credentials belonging to R.M., a real person, to breach R.M.'s account at Provider-1 and thereby steal confidential data belonging to R.M.'s employer, Victim-2, a U.S.-based media and entertainment company. Raoult had previously used his account at

Plea Agreement - 7
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Provider-1 to test the phishing website used to steal R.M.'s credentials. Records from Provider-1 show that Raoult used the same device to breach R.M.'s account that he used to access his own Sezyokzn account at Provider-1.

In furtherance of the conspiracy, Raoult and his co-conspirators hacked numerous companies, including companies in the Western District of Washington, elsewhere in the United States, and in other countries. Those victim companies included, but were not limited to, the following: Victim-2, described above; Victim-3, a management and communication platform provider, based in the Western District of Washington; Victim-4, a foreign e-commerce company; Victim-5, a U.S.-based clothing and apparel company; and Victim-7, a U.S.-based video game developer. Using his Discord account Sezyo#1234, Raoult discussed with his co-conspirators the breaches of numerous victim companies, including companies that were breached by a co-conspirator rather than by Raoult.

The data that Raoult and his co-conspirators stole from victim companies included both the companies' own confidential and proprietary data, such as source code, and customer records, which included personally identifiable information and financial information. In total, the co-conspirators stole hundreds of millions of customer records. The actual loss to victim companies is estimated to exceed $6 million. That does not include losses that victim companies' customers may have suffered from identity theft at the hands of those who purchased their stolen information, as those losses are impractical to measure.

After Raoult and his co-conspirators hacked companies, a user going by the name ShinyHunters posted hacked data from many of those companies for sale on dark web forums, including RaidForums, EmpireMarket, and Exploit. Between April 2020 and July 2021, ShinyHunters posted sales of hacked data from more than 60 companies. A company's stolen data typically sold for thousands of dollars, and ShinyHunters sometimes sold the same company's data multiple times. For example, ShinyHunters sold the data from Victim-4 for $5,000, 13 different times, for a total of $65,000. On or about May 8, 2020, Raoult asked Bildstein whether Bildstein had succeeded in selling Victim-4. In August 2020, Raoult offered to find buyers for private customer data, including credit card numbers, from Victim-6, a U.S.-based diet and fitness company that was hacked by a co-conspirator. ShinyHunters also demanded ransoms from some victims and succeeded in obtaining ransoms as large as $425,000. When the co-conspirators breached companies' cloud computing providers, they sometimes used them to generate profit by cryptomining, while the cloud provider billed the use of computing power to the victim companies. At times, including in March 2021, Raoult also targeted cryptocurrency platforms to profit by hacking accounts and selling stolen keys so that others could withdraw funds. In addition, Raoult sold exploit kits to individuals who were not co-conspirators, so that those individuals could use Raoult's code to breach companies through their employees' accounts at Provider-1.

Plea Agreement - 8
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Raoult, Bildstein, and El Ahmadi were located outside the United States, typically in France, when they engaged in the charged hacking activity. Executing the hacking conspiracy involved many interstate and foreign wire communications, including phishing email messages that the co-conspirators sent to company employees located in the Western District of Washington.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, such as additional evidence about victims, profit, or communications among conspirators, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing. Defendant understands that the United States expects to present evidence that Defendant was a member of the charged conspiracy for a longer time than he has admitted in this factual basis.

9. **Sentencing Factors**. The parties agree that the following Sentencing Guidelines provisions apply to this case:

    a. Count 2:

        i. A base offense level of 7, pursuant to U.S.S.G. § 2B1.1(a).

        ii. Eighteen levels are added (+18) based on a loss of more than $3.5 million (estimated loss exceeding $6 million), pursuant to U.S.S.G. § 2B1.1(b)(1)(J).

        iii. Two levels are added (+2) because the offense involved 10 or more victims, pursuant to U.S.S.G. § 2B1.1(b)(2)(A).

        iv. Two levels are added (+2) based on the offense involving receiving and selling stolen property, pursuant to U.S.S.G. § 2B1.1(b)(4).

Plea Agreement - 9
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

v.  Two levels are added (+2) because a substantial part of the
                        scheme was committed from outside the United States and the
                        offense involved sophisticated means, pursuant to U.S.S.G.
                        § 2B1.1(b)(10).
                    vi. Two levels are added (+2) because the statutory enhancement
                        at 18 U.S.C. § 3559(g)(1) applies, pursuant to U.S.S.G.
                        § 3C1.4.
        b.  Count 8:
                    i.  A mandatory consecutive sentence of 2 years, pursuant to
                        U.S.S.G. § 2B1.6.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Acceptance of Responsibility.** At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11. **Recommendation Regarding Imprisonment.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the government agrees to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is a term of 87 months. Defendant understands that this recommendation is not binding on

Plea Agreement - 10
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the Court and the Court may reject the recommendations of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

12. **Restitution.** Defendant agrees that the Court can order Defendant to pay restitution to the victims of Defendant's crimes and, in exchange for the agreements by the United States contained in this Plea Agreement, Defendant agrees that restitution in this case should not be limited to the offenses of conviction. Defendant is aware that the United States will present evidence supporting an order of restitution for all losses caused by all of Defendant's criminal conduct known to the United States at the time of Defendant's guilty pleas, to include those losses resulting from crimes not charged or admitted by Defendant in the Statement of Facts, including all losses associated with his and his co-conspirators' computer hacking activity between November 2019 and June 2021. In exchange for the promises by the United States contained in this Plea Agreement, Defendant agrees that Defendant will be responsible for any order by the District Court requiring the payment of restitution for such losses. The parties estimate that the restitution in this case will be at least approximately $6 million.

a. The full amount of restitution shall be due and payable immediately on entry of judgment and shall be paid as quickly as possible. If the Court finds that the defendant is unable to make immediate restitution in full and sets a payment schedule as contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately-enforceable financial obligation, including, but not limited to, by pursuing

Plea Agreement - 11
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

assets that come to light only after the district court finds that the defendant is unable to make immediate restitution.

b. Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to cooperate fully with the United States' investigation identifying all property in which Defendant has an interest and with the United States' lawful efforts to enforce prompt payment of the financial obligations to be imposed in connection with this prosecution. Defendant's cooperation obligations are: (1) before sentencing, and no more than 30 days after executing this Plea Agreement, truthfully and completely executing a Financial Disclosure Statement provided by the United States Attorney's Office and signed under penalty of perjury regarding Defendant's and Defendant's spouse's financial circumstances and producing supporting documentation, including tax returns, as requested; (2) providing updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances; (3) authorizing the United States Attorney's Office to obtain Defendant's credit report before sentencing; (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information; (5) authorizing the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office; (6) submitting to an interview regarding Defendant's Financial Statement and supporting documents before sentencing (if requested by the United States Attorney's Office), and fully and truthfully answering questions during such interview; and (7) notifying the United States Attorney's Office before transferring any interest in property owned directly or indirectly by Defendant, including any interest held or owned in any other name, including all forms of business entities and trusts.

Plea Agreement - 12
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c. The parties acknowledge that voluntary payment of restitution prior to the adjudication of guilt is a factor the Court considers in determining whether Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).

13. **Forfeiture of Assets.** Defendant understands that the forfeiture of property is part of the sentence that must be imposed in this case. Defendant agrees to forfeit to the United States immediately his right, title, and interest in all property that constitutes or is traceable to proceeds of the wire fraud scheme, as charged in the Indictment. All such property is forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c).

The Defendant agrees to fully assist the United States in the forfeiture of any forfeitable property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any property located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. The Defendant agrees not to file a claim to any of this property in any federal forfeiture proceeding, administrative or judicial, that may be or has been initiated, or to otherwise contest any federal forfeiture proceeding that may be or has been initiated. The Defendant also agrees he will not assist any party who may file a claim to this property in any federal forfeiture proceeding.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which the Defendant has any interest or control, if that property constitutes or is traceable to proceeds of his commission of Wire Fraud.

14. **Abandonment of Contraband.** Defendant also agrees that, if any federal law enforcement agency seized any electronic devices or illegal contraband that was in Defendant's direct or indirect control, Defendant abandons any interest in such devices or

Plea Agreement - 13
*United States v. Sebastien Raoult*, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

contraband and consents to the federal administrative disposition, official use, and/or destruction of such devices or contraband (and/or the deletion of data stored on such devices), including but not limited to, the following devices, as well as any contraband or non-contraband files contained on such devices: Asus Notebook PC with serial number M8NRKD033956337; Apple iPhone with IMEI number 359206400617627; and Apple iPhone with IMEI number 353995104675685.

15. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and to move to dismiss the remaining counts in the Indictment as to this Defendant at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

16. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence; (b) Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

Plea Agreement - 14
United States v. Sebastien Raoult, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Agreement; and (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

17. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty pleas required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

a. Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

Plea Agreement - 15
*United States v. Sebastien Raoult*, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

    b.  Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

  This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

  If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

  18.  **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

  19.  **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

  20.  **Completeness of Plea Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District

Plea Agreement - 16
*United States v. Sebastien Raoult*, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 27th day of September, 2023.

_____
SEBASTIEN RAOULT
Defendant

_____
DENNIS CARROLL
VANESSA PAI-THOMPSON
MUKUND RATHI
Attorneys for Defendant

_____
ANDREW C. FRIEDMAN
Assistant United States Attorney

_____
MIRIAM R. HINMAN
Assistant United States Attorney

Plea Agreement - 17
*United States v. Sebastien Raoult*, CR21-109 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970